Final case on our call this morning is agenda number 16, numbered 106353 and 106359 Consolidated. Susan H. Lacey, et cetera, versus the Village of Palatine, et cetera. Counsel may proceed. May it please the Court, Counsel. My name is Jennifer Medenwald and I'm here today representing the defendants in appellants in this court. The Village of Palatine and individual Palatine detectives Tolley, Burtnick, and Cragar. We request that this court reverse the appellate court's determination that the wrongful death and survival claims predicated on the Domestic Violence Act and asserted on Mary Lacey's behalf can proceed past the dismissal stage. The trial court, as this court is aware, granted the Palatine defendants Section 2619A9 motion to dismiss those claims predicated on the Tort Immunity Act. That ruling was correct and should be reinstated. I think it's important at the outset of the argument to note that this court need not determine whether Section 4102 and 4107 of the Domestic Violence Act apply at all. If it does not, and it does not here, particularly where the Palatine defendants are concerned, it is not the case that this court   Section 305 of the Domestic Violence Act provides for limited immunity, limited liability, where police act willfully and wantonly in rendering   assistance or otherwise enforcing the act. All parties are in agreement here that what the Palatine defendants were doing at the time of their investigation and the time of the murders was not rendering emergency assistance as that phrase is found in Section 305 of the Domestic Violence Act. Rather, the theory that plaintiff has proceeded on is that the Palatine defendants and the Glenview defendants were otherwise enforcing the Domestic Violence Act. No pronouncement from this court has spoke as to what that phrase as used in Section 305 of the act means. The Palatine defendants would submit that that phrase as found in Section 305 means responding to a domestic violence call or investigating the violation of a protective order. The analysis of how we get there is through looking at the cases that interpret 2202 of the Tort Immunity Act. Here, the Palatine defendants were neither responding to a domestic violence call nor investigating the violation of a protective order. The Palatine defendants' investigation in October of 2004 was of a solicitation for murder for hire plot conceived by Ms. Lacy's ex-boyfriend, Mr. Zirko. There is no allegation in the plaintiff's complaint that contemporaneous to our investigation, a protective order had been violated. There was one protective order that remained in effect at the time of our investigation. Further, nothing that the Palatine defendants did was consistent with the duties enumerated in Section 304 of the act. We have to look at 304 of the act as well as 305. That section of the act provides that an officer who has reason to believe that a person has been abused, neglected, or exploited shall immediately use all reasonable means to prevent further abuse, neglect, or exploitation. Some of those means include de-arming a perpetrator, transporting a domestic violence victim to a medical facility or to a court, if necessary, providing a victim with social services information, accompanying the victim to his or her home to retrieve their belongings. Our actions are not consistent with those duties as enumerated in the act. There is, that being said, a temporal or contemporaneous aspect that's been present in the other cases dealing with the Domestic Violence Act that simply is not present here. Another reason, another basis for which this Court can find that the Palatine defendants were not otherwise enforcing the act is that Lacey was outside the Palatine defendants' territorial jurisdiction. What does temporal relationship mean? What would it be? Well, Section 304 talks about the words has been abused, neglected, or exploited and that a police officer shall immediately take necessary measures, if you will, to prevent further abuse, neglect, and exploitation. There's a sense of the word immediate appears in the statute and there is a proximity, if you will, between when the officer has reason to believe that a person has been abused, neglected, and exploited and I guess when the officer learns of those acts in relation to when the acts actually occurred. And here we don't have that. What the plaintiff is saying is that there is a history here of protective orders being entered on behalf of Ms. Lacey and protective orders being violated by Mr. Zirko. But there was nothing in October of 04 when our investigation of the solicitation for murder for hire plot began, no report of any violation of a protective order. And that's what makes this case different from the other cases that this Court has decided. The Palatine defendants weren't investigating the violation of a protective order and they weren't responding to a domestic violence call. And absent that, they can't be held to have been otherwise enforcing the act, as referenced in the statute. Lacey was importantly outside of the Palatine defendants' territorial jurisdiction. Neither Lacey nor Zirko lived in Palatine. Palatine's only connection to this is that the chiropractor to whom Mr. Zirko made comments had an office in Palatine. In that respect, the Palatine defendants are no different than the Chicago Police Department, against whom plaintiff has abandoned their claims under the Domestic Violence Act. Further, the allegations in the complaint... Is there no significance to the fact that it was Palatine officers that initially contacted the victim? I don't believe so, Judge, when coupled with the fact that the Palatine defendants also recognized their territorial, the limits to their jurisdiction, if you will, because they also got the Glenview Police Department involved. That's where Ms. Lacey lived, not in our jurisdiction. The allegations to the effect in the complaint that Lacey repeatedly called the police departments between October and December of 2004 is also something important and something that I suspect my opponent will emphasize before the court today. But it's important to look at the substance of those allegations and what's being pled as to what the conversations, the substance of the conversations were as between Lacey and the police department. Ms. Lacey requested that the police either arrest Mr. Zirko or promise the protect, or provide the protection that they had promised her. Importantly, neither of those things is required under the act. Arrest is not mandatory under the act. And Ms. Lacey's calls, alleged calls to the police department don't transform our conduct in our dealings with her as to being something that's governed by the act. The other important point to note is that our investigation ended in October. We certainly can't be held to have been otherwise enforcing the act at the time of the murder some two months later. And again, there was nothing, no call, no activity to suggest that there was a violation of the protective order in that two month time that would have triggered the duties under the act. The plaintiff would have it be the case that just because Lacey had been the recipient of protective orders in the past and there was a protective order won, in effect, during the relevant time period, that our dealings with Lacey are automatically governed by the Domestic Violence Act. Respectfully, that's not what the Domestic Violence Act holds, and there are preconditions to the application of Section 305 and Section 304 of that act that aren't present here in this case. The result for which the Palatine defendants advocate here also makes sense from a public policy standpoint. You have officers from municipalities two to three districts away that are responsible for endlessly safeguarding the well-being of people living in other municipalities, all to the detriment of their own citizens. This is an instance where resources are spread too thin. These public policy arguments, which were brought out in Moore and the court found to ring hollow, don't ring true. They don't ring hollow here if you consider that the Domestic Violence Act does not apply. And with that, I will turn over the remainder of the appellant's argument, absent any questions from the court, to my co-defendant representing the Village of Glenview. Thank you, counsel. Mr. Chief Justice, your honors, counsel, the pleas of the court, Richard Stavins, on behalf of the Glenview defendants. I'm not going to repeat anything that counsel said, but I'd like to do this. I'd like to focus on that phrase, enforcing this act, because that's the legislative key to this issue. I would analogize it to the language in Section 2-202 of the Tort Immunity Act, which is that a police officer is liable only for willful and wanton misconduct while he's engaged in the execution or enforcement of any law. We have that word, enforcement, enforcing, in both of those statutes. This court held in 1972 in Arnold v. City of Highland Park, which is South Carolina. It's cited by the appellee in his brief and is cited by the appellate court in its decision, that that means that when the police officer is on routine patrol, for example, the statute does not apply the standard is ordinary negligence, when he starts to respond to some kind of a police call and goes to the scene, makes an investigation, he's engaged in the enforcement of the law. When he leaves that scene, that's the end of engaged in the enforcement of the law. Up until this court's decision in Arnold, it was believed that, well, police officers are deemed to be on duty 24 hours a day, and therefore the police officer is always engaged in the enforcement of the law, and this court in Arnold said no. It's a limited period of time. I think the same thing can be held true of the Domestic Violence Act, that enforcing this act is a limited period of time, and it was clear in Moore and Calloway, the other two cases that came before this court, one last year, was the last year or the year before, and then the other one in 1996, under the Domestic Violence Act, where the court had a situation of a law enforcement officer comes to the scene of domestic violence, he's there, he's outside, and he doesn't do anything, but he's there outside. That's just like the police officer who goes to the scene of the crime, he's engaged in the enforcement of the law, the police officer going to the scene of the domestic violence call is engaged in the enforcement of the Domestic Violence Act. And at that moment, in Moore and in Calloway, that law enforcement official engaged in an act of omission. He looked at the house, didn't even ring the doorbell, didn't even get out of his squad car, and drove away, and a tragedy happened, one there was injury, the other was death. Were the officers in Glenbrook, were you ever engaged in the enforcement of the Domestic Violence Act in this fact? In this case? Yes. If at all, it was when they had the initial contact with Mary Lacy, when they went to see her at her house, they knew that there was an order of protection in effect, and they saw her at her house. But, and that's in October, the event here, the tragedy of the death of Mary Lacy, doesn't occur until two months later. And what the plaintiff seeks is to have the enforcement of the Domestic Violence Act, and the police officer of the Domestic Violence Act, the enforcement of this act, continue for that entire two months. Now, there's good reason for the legislature to have passed the law and to have phrased it as it did, because the experience was police officers would go to the scene of a domestic violence call, and they would say, I remember myself doing a police ride along way back in law school, and they would say, oh, it's just a domestic, and they'd go away, exactly what the officers did in Moore and Calloway. But that's not what happened here. When we were enforcing... Is your response, Mr. Stubbins, to I think the argument made by Mr. McAllister is the act of omission is not arresting Zerko based on knowing what they knew, and I think that Ms. Mendenwall indicated that they didn't have a duty to arrest, is that your... We could not arrest unless we had probable cause, and then the statute further gives us police discretion whether to arrest or not. And we couldn't, we didn't feel we had probable cause at that time to make the arrests. That's with the fact that the officers had been given information that there was a plot developing to take the lives of these people. And I understand that the question is whether you're going to have sufficient evidence of that to arrest for the... We would have lost that case. If we had arrested him and tried to prosecute him, it would have been a not guilty. There just wasn't sufficient... And the order of protection, not on the solicitation. For violation of the order of protection, you say. It's a close question. It's a close question at that time, but I think if we look at it back with the benefit of hindsight, we all wish that that's what had occurred. But I think the police were acting in good faith... Was it the Glenview or Palentine police or both who initially made, I don't know what you'd call it, at least a statement that they would protect the eventual victim? That promise that's alleged in the complaint to protect the victim comes under 4-107, 102 and 107 of the Tort Immunity Act. It's a promise to make an arrest. It's a promise to solve a crime. It's a promise to provide adequate police protection, and it's immunized. Is it any part of the Domestic Violence Act? There's no statement about anything in the Domestic Violence Act about the promise. The promise doesn't give rise to liability, because the promise is immunized under the Tort Immunity Act. We're all in agreement that if the Domestic Violence Act does not apply, then the Tort Immunity Act does apply, and it immunizes the conduct here, because this falls under failure to solve a crime, failure to prevent a crime, failure to make arrests, and so on. But that alleged promise doesn't create liability under the Domestic Violence Act. That's our position. Are there no further questions? Thank you very much. Good morning, Your Honors. Gary McAllister, representing the estate of Mary Lacy DeCease. It's quite a week to be in a foundry in Atchison, Kansas, taking depositions on Monday and Tuesday in this lovely Hall of Justice. Today it's a privilege to be before Your Honors. I think we should start just with this notion about we're all in agreement. We are not all in agreement, by any stretch of the imagination, that the omission on the part of the police departments and their respective officers would be subject to the Tort Immunity Act. There's been a significant softening of the defense position from their path from the Court of Appeals to the Domestic Violence Act. And now they are basically recognizing clearly that Moore controls with regard to the provisions of the Domestic Violence Act and its duties and obligations upon these police officers. This Court, in Moore, of course, has recognized the special character of the domestic violence cases and the duties imposed upon the enforcement officers and the municipalities. This is not a case about a limited period of time. This is more about the enforcement of the act, the Domestic Violence Act, and the protection of Mary Lacy in a course of conduct. And this Court has found in those 202 cases, and more particularly in the Domestic Violence Act, Callaway, that a course of conduct is involved in the enforcement of the act. This act goes well beyond helping victims. This act is no stranger to this Court, and there's very good, sound public policy reasons for why it was enacted. Specifically, Counsel, under the Domestic Violence Act, what specific duty did the defendants owe to Ms. Lacy? They were required, upon being made aware of an abusive act, as those terms are defined, and I'll come to the specific definitions in a moment, take immediate use of all reasonable means to prevent further abuse. They must arrest the abuser where appropriate, and in this case, there was sufficient probable cause for them to arrest him for a violation of the Domestic Violence Act. And based upon the facts as properly pled in the complaint, had a right to arrest and to further protect her from October the 20th, really from the one they first learned of it, October the 14th, until the time of her death. In this case, the facts are presented in the complaint that repeated calls were made for her protection. And so, if this Court affirms the appellate court, do officers have discretion in this situation as to whether to make an arrest? They always have discretion under the law, but if there's a sufficient basis for probable cause, what Counsel has said is that they didn't have probable cause for an arrest on the solicitation for murder, but they're certainly under the definitions relating to what constitutes abuse behavior, harassment, intimidation, and those particular elements are clearly violations of the act. Abuse, physical abuse, harassment, intimidation of a dependent, interference with personal liberty, that's section 103.1. Counsel, can you relate these principles to the facts in this case? Well, yes, Your Honor, this woman had had numerous protective orders in effect, all of which were known to Palatine and Glynview, all of which were available to them through the Leeds computer program. There was a standing existing order of protection entered in December of 2003. He was a known abuser, he was a known intimidator, he was a known person to interfere with her. Could you point to any known fact, not past fact, but any known fact at the time that Lacey was in their police custody that they could have arrested him for a violation of the pending order of protection? Well, when one is alleged to have solicited the murder of a person or to find someone to either kill her or to be hired to do the murder of a person, that's a different case. If the person was hired to kill her, that would constitute at a minimum... So the basis of your argument is the evidence that could have received from the chiropractor would have been sufficient probable cause to arrest on the... In the totality of the circumstances, in the totality of the circumstances then existing and as alleged in our complaint, yes, Your Honor. Mr. McAllister, is there anything, keeping with that line of thought, is there anything specific in the DMV that requires such arrest on a possible crime? That does not involve an actual violation of an order of protection? Your Honor, I think that the, I think that if it constitutes one of the definitional sections of abuse, threat of physical force, which is presumed to cause emotional distress and therefore deemed to constitute harassment, then yes, that would suffice. Do we know if these threats were transmitted to the victim? They were transmitted to the victim by the police officers. But do we know whether Mr., what was his name, Zirko? Mr. Zirko. Zirko, whether he made any kind, she was made aware of this by the police? She was made aware of this by the police officers, both the Palatine and the Glenview police officers, which came to her home. And that's really the distinguishing factor here. I suspect the whole notion of this time frame is what's really troubling this Court. And perhaps it's the reason that you granted the petition. But in this situation, the distinguishing factor in this case, and the reason that the Court of Appeals got it right, is that the defendants failed in their burden to come forth with any evidence. They have the burden to come forward with regard to the proof of the immunity. And more particularly, the Court found that the, lost my train of thought, I apologize, that the duties were owed and that they were breached to her because of the undertaking, undertaking, the promise made affirmative by the police department to protect her. Counsel suggested here, which obviously shows the question of fact the Court of Appeals found, that she was requesting this protection. The facts alleged in the complaint is that the promise was made by the police departments, the Palatine and the Glenview police departments and their officers, that they would provide her with protection. There's no duty written into the act, but when the officers come to the home in the face of the victim and the family and make that promise, they create an undertaking. What level of protection do you think was envisioned when they made that promise? Drive-bys that the cop would look at once in a while? The allegations in the complaint, the well-pled facts in the complaint, are that they promised to provide her with 24-hour surveillance. Isn't there also an allegation in the complaint that says she knew protection was not being provided? She was concerned that she wasn't being protected. She called, according to the allegations of the complaint, calls were made to insist upon the protection that had been provided. And those, those are well-pled facts in this complaint. The burden is on the defendant to come forward with the proof of the immunity and they failed to do so. And I think an analysis of the Court of Appeals' decision on this point is telling. The questions of fact that the Court of Appeals found on each and every issue, the Court found specifically that each element of the act had been met, that she was a person protected, that the duties owed by the law enforcement to Mary were breached by willful and wanton acts, and by the way, the trial court also found sufficiency of the facts alleged on 615 motions in the trial court below, and that such conduct proximately caused the injuries. What facts did the court find to be material, genuine issues of fact persisting? Whether the defendants are guilty of willful and wanton conduct is purely a question of fact. That's at page 73. Whether the defendants had probable cause to arrest Zerko and arrest him on a violence act claim. The defendants claim there was no probable cause, but they failed to satisfy their burden, showing what their investigation ruled out with regard to probable cause, page 74 of the opinion. Question of fact as to the circumstances of the promise of protection and surveillance, page 74. The defendants argue here that their promise expired by the date of the murders. There was no event, but on the evidence presented by the defendants or the officers who made the promise, there's no evidence in this case to show a limitation was intended or conveyed. Whether the investigation was sufficient to avoid a finding of willful and wanton conduct, page 74, there's a complete failure of proof by the defendants. They did not describe the extent of their investigation, and there's certainly no evidence as to why there was no probable cause here. Mr. McAllister, you mentioned one of the concerns is the whole temporal nature here and the timing element, and I see the appellate court did rely on Moore. In Moore, the wife called 911 and told police that the husband owned a gun, and they went to the scene, they parked out for five minutes and left without offering any assistance, and five minutes later, the husband shot and killed the wife. Yes. Right? In Callaway, the wife had an order of protection. He violated it by making threatening phone calls. The wife called the police, informed them of a violation, and simply acknowledged their awareness of it. Within an hour, the husband abducted the wife at gunpoint and kidnapped her. So we've got five minutes, and we have an hour. Yes, sir. How does the, you said we're concerned a little bit, you think we're concerned, and I think that's probably accurate as to the whole temporal nature argument. How does this case fit within the fact patterns of Moore and Callaway? Well, first of all, there is an event that's occurring in October that's clear, and the court really, I think, as much as it took its direction from Moore and Callaway, Moore being really setting in place how the exception to immunity applies, and then Callaway, it looks at the course of conduct. What is the enforcement of the law in this context of domestic violation protection? And that is a course of conduct over a period of time, albeit five minutes, an hour. Sneed is a case I think that the Court of Appeals looked at very closely, and that has a seven-day time frame, and that's a week. And in this situation, if you look between October the 14th, when they began their investigation, and they had evidence from the chiropractor, and the 22nd, when they supposedly completed their investigation, and which they failed to inform Mary that it had been concluded, they failed to inform her that they were no longer providing protection, they failed to advise her that they were no longer surveilling, and they failed to inform her that she had a right to press criminal charges and to have a meeting set up with the state's attorney's office. So really under the domestic violence act, you're asserting there was a duty to arrest, there was a duty to provide 24-hour surveillance, there was a duty to, if you're not, to affirmatively state that you're not. No, sir, I'm not. I'm saying that there was a duty to arrest in this instance because that would have been an immediate response of all reasonable means. They promised for the protection, and they promised for the surveillance. That's the overriding distinction here. Is that right discretion completely out of both the police departments and the prosecutor to determine whether an arrest is warranted? Absolutely not. Absolutely not. That makes this case not a candidate for reversal of the appellate court because of the distinguishing factor of the promise made on the facts as alleged by the department. They didn't have to make the promise. They didn't have to agree to the surveillance. They did it. And if they chose to stop, they had an obligation to tell her so that she could have reasonable opportunity to protect herself. That makes the distinction here. The undertaking in this case is really the hallmark as to why this case should not cause, Your Honors, difficulty with regard to the temporal element. If the legislature had intended there to be a temporal element, they would have said so. They did not. And this court has clearly indicated through Moore and Callaway that certainly the enforcement can be a course of conduct. Have you identified a duty to inform when the investigation is over? Is that the duty that was breached here? That's one of the duties that was breached here, yes, sir. And there is a duty. Yes, 750 ILCS 6304B. They had an obligation to tell her when they enclosed this investigation that criminal charges could be filed and that they were obliged to provide a specific time and place for meeting with the state's attorney's office or other representative to pursue that should that be her choice. The omission here in the context of the facts of this case and the promise that they made based upon the well-plaid facts creates questions of fact, Your Honor, just as the Court of Appeals found. And I respectfully request that Your Honors affirm. How did the breach approximately cause the plaintiff's injuries? The court found that the failure to arrest or to take action, reasonable steps within the time frame presented resulted in a question of fact concerning the proximate cause issued here. Had he been arrested and taken out of circulation, this wouldn't have happened. But there's no guarantee he wouldn't have bonded out. Of course there's not, Your Honor, but that's a question of fact.  The jury's entitled to decide that. Thank you, Your Honors. Just a few brief points. Counsel was asked how this case fits within the fact patterns of Moore and Calloway and the simple answer is that it does not. In Moore, the Domestic Violence Act was implicated because of the 911 call made to the police. There's a rendering of emergency assistance. In Calloway, there were reports of violations of protective orders. That's where the Domestic Violence Act came into play in that case. Counsel also referenced Sneed, and I'd point out that in that case as well, there were reports, repeated reports of violations of protective orders. I think some of the questions that have come from Your Honors today hit the nail right on the head, that in October of 04, Mr. Zirko, while he's conveying these thoughts to his chiropractor, was not in violation of a protective order. I think that's what's being asked, and our answer to that question would be no. Counsel points to the definitions of abuse and harassment and interference with personal liberty, but there are important conditions within those definitions for something to constitute harassment and therefore be thought to be abuse, as used in Section 304 of the Act, there has to be a causing of emotional distress. It was pointed out by one of the justices here today that absent the police telling Ms. Lacy about this plot, she knew nothing. It was unbeknownst to her. It hadn't caused her emotional distress. It's a rebuttable presumption in the definitions. The same is true with the interference of personal liberty. Under that definition, the victim, if you will, has to alter their course of action or conduct or restrain from doing something because of the acts of the abuser. Again, Ms. Lacy didn't know about this. It was unbeknownst to her until the police told her. She hadn't altered her course of conduct, and when the police first alerted her to the plot, there was no report of, yes, I've noticed that Mr. Zirko's following me or he's called my house and threatened me, threatened my children. There were no other facts or evidence to suggest that Mr. Zirko had taken any step in furtherance of this plot. All we had were the hearsay statements of the chiropractor. How about the significance of the failure to tell the victim that the investigation was over? Counsel referenced a specific section of 304, 304B, which until today I was unaware was even at issue. That's not been in any briefs before the court. The duties that are alleged to have been violated here are those set forth in the first part of Section 304A. And again, if you look at what those duties are, they aren't the types of things that we were doing here or were ever in a position to do on Ms. Lacy's behalf, dearming the perpetrator, taking her to a medical facility, explaining to her the need to preserve evidence. That's not this situation. I think Your Honors can, as you did in Moore, obviously there was a stress upon the legislative intent of the Domestic Violence Act, how important it is, that particular piece of legislation to recognize the seriousness of domestic violence. But in a case such as this, where the Domestic Violence Act doesn't apply and Section 305 is not triggered because there is either not a rendering of emergency assistance or otherwise enforcing the act, we're not at all detracting from the purposes behind the legislation. Again, this case is not Moore. There is no agreement here amongst the parties that Moore controls. In fact, we've argued, and I don't know how much clearer we can, that Moore does not control the outcome here. And there were critical missteps in the appellate court's analysis of that point. The appellate court was mired down with the notion that we had to prove immunity, the defendants had to prove their immunity under 4102 and 4107 of the Tort Immunity Act, rather than examining whether in fact the Domestic Violence Act does not. And we ask for that reason that court reinstate the judgment of the trial court. Thank you, Your Honors.